# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **JONATHAN WILLIAMS,** | § | |
| **Petitioner** | § | |
| | § | |
| **v.** | § | **A-10-CA-609-SS** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of** | § | |
| **Criminal Justice–Correctional** | § | |
| **Institutions Division,** | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner Jonathan Williams's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 2), Williams's Memorandum in Support of Petition for Writ of Habeas Corpus (Document 3), and the Answer of Respondent, Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (Document 11). Williams did not file a reply. Williams, proceeding pro se, has been granted leave to proceed in forma pauperis. *See* Order (Sept. 2, 2010) (Document 8) (granting IFP status). For the reasons set forth below, the undersigned finds that Williams's application for writ of habeas corpus should be denied.

## I. PROCEDURAL HISTORY

The Director has custody of Williams pursuant to a judgment and sentence of the 22nd District Court of Hays County, Texas, in Cause No. CR-05-280. 1 C.R. at 292-94.[1] On April 13, 2005, Williams was charged with murder. 1 C.R. at 2. On February 8, 2006, a jury found Williams guilty as charged and, on February 9, 2006, assessed a sentence of fifty-five years incarceration. 5 R.R. at 113; 1 C.R. at 292.

On August 29, 2006, Williams filed a state habeas corpus application, contending that appellate counsel had never been appointed for his appeal. *Ex parte Williams*, Appl. No. WR-65,980-01, at 5. The Texas Court of Criminal Appeals granted Williams's application and reinstated his right to an appeal. *Ex parte Williams,* No. AP-75,583, 2007 WL 57844, at *1 (Tex. Crim. App. Jan. 10, 2007).

Williams subsequently filed a notice of appeal on January 31, 2007. 1 C.R. at 302. His conviction was affirmed by the Third Court of Appeals of Texas on June 18, 2009. *Williams v. State*, No. 03-07-00117-CR, 2009 WL 1708819 (Tex. App.–Austin, June 18, 2009, no pet.). He did not file a petition for discretionary review ("PDR") or a petition for a writ of certiorari in the United States Supreme Court. *See* Pet. at 3.

On August 13, 2009, Williams filed his first application for state writ of habeas corpus challenging his conviction. *Ex parte Williams*, Appl. No. WR-65,980-02, at 1. The Texas Court of Criminal Appeals dismissed the application because Williams's direct appeal remained

---

[1] [#] C.R. [#] indicates a reference to a particular volume of the Clerk's Record in the trial court. [#] R.R. [#] indicates citation to a particular volume of the Reporter's Record.

pending. *Ex parte Williams*, Appl. No. WR-65,980-02, at cover (Oct. 7, 2009). Williams then filed a second state habeas application attacking his conviction on October 29, 2009. *Ex parte Williams*, Appl. No. WR-65,980-03, at 1. This application was likewise dismissed because Williams's direct appeal was still pending. *Ex parte Williams*, Appl. No. WR-65,980-03, at cover (Jan. 6, 2010). After the direct appeal was adjudicated, Williams filed another habeas application on April 9, 2010. *Ex parte Williams*, Appl. No. WR-65,980-04, at 1. The Court of Criminal Appeals denied this application on July 28, 2010 without written order. *Ex parte Williams*, Appl. No. WR-65,980-04, at cover (July 28, 2010). On August 5, 2010, this Court received Williams's federal application for habeas corpus relief. Pet. at 1.

## II.  FACTUAL BACKGROUND

The evidence presented in this case appears in the Third Court of Appeals opinion.

[Williams] was charged with murdering Michell Webb, whom he had been dating for a number of years. Webb was reported missing by her family on November 17, 2003, after her father found her car in a Wal-Mart parking lot in Bexar County. A San Antonio police officer questioned appellant about Webb's disappearance, and appellant said he did not know where she was. The officer noticed a small abrasion under appellant's left eye, and appellant said his nephew had scratched him while they were wrestling. Although appellant did not raise the officer's suspicions related to Webb's disappearance, he was arrested due to unrelated outstanding warrants and brought before a magistrate; he was still in police custody when he eventually led the police to Webb's body on November 20, 2003. On November 19, 2003, the police found Webb's keys and credit card in a closet at the car wash where appellant worked. That same day, while appellant was still in custody for the unrelated warrants, Detective Tim Angell interviewed appellant, telling appellant he was inquiring into Webb's disappearance and reading him his statutory rights. Appellant initially denied knowing anything about Webb's whereabouts, but after Angell said that the police were fingerprinting Webb's vehicle and had recovered a videotape from the Wal-Mart parking lot, appellant said that on November 16, 2003, Webb, whom he had been dating for four years, told him she "needed to get away." Appellant said that at Webb's request, he dropped her off at the airport at about midnight, left her vehicle in the parking lot, rode his bike home, and then lied to

Webb's parents when they called looking for her. Angell typed appellant's statement as appellant spoke and asked appellant to read and sign the statement, which includes a portion setting out appellant's rights. Appellant initialed next to each of his statutory rights and signed the statement.

On November 20, 2003, Detective Barney Whitson interviewed appellant again about Webb's disappearance. During the course of the day, appellant gave three different statements, each of which was typed on a form that recited appellant's statutory rights, included a statement that appellant understood and waived his rights, and was read and signed by appellant. Before appellant gave his first statement, Whitson also read him his rights and had appellant initial a different form from which Whitson read appellant's rights. Appellant's first statement was similar to the story he told Angell, but when Whitson said he thought Webb had scratched appellant's face and suggested that DNA evidence could incriminate appellant, appellant gave a second statement in which he said members of the Mexican Mafia to whom he owed money had taken Webb.

Whitson again told appellant that he did not believe his statement and informed him that the police had found blood inside Webb's car and "that not only did [appellant] have a scratch under his left eye, his right eye was also scratched and it looked like [Webb] was trying to gouge his eyes out." Appellant then gave a third statement admitting to killing Webb. Appellant said Webb was upset because he told her he "just wanted to be friends," so he and Webb drove around in her car, smoked marihuana, and argued. According to appellant's statement, Webb lunged at him and scratched his face, and he "held her against my chest to keep her from hitting me" and to calm her. Appellant held Webb until she stopped moving and then realized he had suffocated her. He unsuccessfully tried to resuscitate her and then drove her body to another location, where he stayed for about four hours, "drinking beer, smoking weed and holding Michell. I was apologizing to Michell." He said, "I don't want to say where I put Michell but I'm willing to show you where she is." Appellant eventually guided Whitson to Webb's body in a field in Hays County.

. . .

In his second issue, appellant argues that the trial court should not have allowed testimony during the guilt/innocence phase by San Antonio Police Officer Daryl Volkmann about a statement appellant made after Webb's body was discovered. Appellant argues that "[a]t the time that the victim's body was found, the Appellant was under the impression that he was under arrest for the traffic warrants" and that "[a]t no time was the Appellant told that he was under arrest for the murder of [Michell] Webb." We disagree.

4

After appellant gave his third statement, Whitson, appellant, and two other detectives drove out to find Webb. After her body was located, Volkmann and his partner were asked to drive appellant back to San Antonio. Volkmann testified that when they arrived back at the police station, appellant asked without any prompting "how much time did I think he would receive for the murder of [Webb]. He stated, 'After all, I confessed to killing her.'" Volkmann had not himself read appellant his rights or informed him that he was under arrest for Webb's murder before appellant made the statement.

Although there was no testimony of when appellant was explicitly told that he was under arrest for Webb's murder, he was told at least four times that he was being questioned with regard to her disappearance; was read his rights at least twice; signed one form reciting his rights to indicate that he understood his rights; signed one form that also recited his rights, initialing next to each right; and read and signed his three written statements, all of which recited his rights and stated that he understood and waived his rights. Before he gave his first statement to Whitson, Whitson informed appellant that he was being questioned with regard to Webb's disappearance, and before his second and third statements, he was also informed about the state of the evidence discovered thus far. Appellant eventually gave a statement admitting to killing Webb and led the police to her body. Not until appellant had been driven back to the police station in San Antonio in handcuffs and leg irons did he make the statement about which he complains. It is beyond rational belief that appellant might have still been under the impression that he was only in custody for outstanding warrants or might somehow not have realized that the focus of the officers' interest in him had shifted from outstanding warrants to Webb's murder. Further, Volkmann testified that appellant volunteered the question without any prompting or questioning, and therefore it was not the result of custodial interrogation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5 (West 2005) (nothing precludes admission of statement "that does not stem from custodial interrogation, or of a voluntary statement"); *Ruth v. State*, 167 S.W.3d 560, 570-71 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd) (volunteered statement made to police officer without prompting by police interrogation was admissible). We overrule appellant's second issue.

*Williams v. State*, No. 03-07-00117-CR, 2009 WL 1708819, at *1-4 (Tex. App.–Austin June 18, 2009, no pet.).

### III.   WILLIAMS'S GROUNDS FOR RELIEF

Williams raises the following grounds for relief:

1.  Williams's inculpatory question and statement asking how long a prison sentence he would receive and that he had confessed to killing Webb was not admissible because it resulted from a custodial interrogation without the benefit of *Miranda* warnings. Pet. at 7-7A (Claim 1).[2]

2.  Williams's initial statement to investigators was coerced because he did not receive pre-interrogation *Miranda* warnings before giving his first statement as evidenced by the fact that a detective listed on the form reciting his rights and signed by Williams was not present during the questioning. Pet. at 7-7A (Claim 2); *see also* Mem. in Supp. of Pet. for Writ of Habeas Corpus at 4-5.

3.  Williams's confession was coerced because investigators threatened him and failed to provide an attorney when he requested one. Pet. at 7-7B (Claim 3); Mem. at 5-6.

4.  Williams's trial attorney provided ineffective assistance of counsel by failing to:

    a.  argue the pro se motions that Williams had filed prior to the appointment of counsel, Pet. at 8 (Claim 4a);

    b.  provide Williams with proper advice concerning raising a self-defense argument rather than arguing that the death was an involuntary act, Pet. at 8-8A (Claim 4b); and

    c.  not filing a notice of appeal, thereby creating a conflict of interest, Pet. at 8A (Claim 4c).

5.  The trial court erred by:

    a.  failing to rule on Williams's pro se motions, Pet. at 8A (Claim 5a); and

    b.  failing to appoint an attorney for Williams's appeal after his trial attorney was allowed to withdraw, thus depriving Williams of his right to counsel, Pet. at 8A (Claim 5b).

6.  The trial court should not have permitted testimony during the punishment phase by a prosecution witness concerning an incident involving the

---

[2] The claim number references correspond to the numbering of the claims in the petition. *See* Pet. 7-8B.

victim and Williams because the witness was not able to identify
Williams.  Pet. at 8A-8B (Claim 6).

## IV.    EXHAUSTION OF STATE-COURT REMEDIES, STATUTE OF LIMITATIONS, AND SUCCESSIVE PETITION

The Director does not contend that Williams's petition is barred by limitations, that

Williams has failed to exhaust available state remedies, or that his petition is a successive

petition.  A review of the state-court records submitted by the Director shows that Williams

properly raised his claims in prior state-court proceedings.

## DISCUSSION AND ANALYSIS

## I.    THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996

The statutory authority of federal courts to issue habeas corpus relief for persons in state

custody is defined by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  By its terms, § 2254(d) bars relief on any claim "adjudicated on the

merits" in state court, subject only to the exceptions in § 2254(d)(1) and (d)(2).  *See, e.g.,*

*Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 780-81 (2011).  Federal habeas relief may not be

granted for claims subject to § 2254(d) unless it is shown that the state habeas court's decision

"was contrary to" federal law then clearly established by the holdings of the Supreme Court, 28 U.S.C. § 2254(d)(1); *(Terry) Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000), that it "involved an unreasonable application of" such law, 28 U.S.C. § 2254(d)(1), or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, 28 U.S.C. § 2254(d)(2).

In *Williams*, the Supreme Court explained the "contrary to" and "unreasonable application" provisions of § 2254(d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13, 120 S. Ct. at 1523. Section 2254(d)(2) likewise commands deference to the state habeas court's factual determinations by precluding relief on any claim that was adjudicated on the merits in state-court proceedings unless the state-court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(2). Moreover, such determinations are presumed to be correct, although a petitioner can rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *See, e.g., Harrington*, 131 S. Ct. at 780-81. Under § 2254(d), a state

court need not cite or even be aware of Supreme Court decisions. *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (*per curiam*)). When a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden must be met by showing there was no reasonable basis for the state court to deny relief. *Id.* This is so whether or not the state court reveals which of the elements in a multi-part claim it found insufficient; as the Supreme Court explained, § 2254(d) applies when a "claim," not a component of one, has been adjudicated. *Id.*

With these principles in mind, the Court now turns to the issues raised by the pleadings in this case.

## II.   WILLIAMS'S GROUNDS FOR RELIEF

Having independently reviewed the entire state-court record and Williams's asserted claims, the Court finds nothing unreasonable in the state court's application of clearly established federal law or in its determination of facts in light of the evidence, as discussed below.

### A.   Williams's Statements and Confessions (Claims 1, 2 & 3)

Williams raises three grounds for relief challenging the voluntariness of his confessions and statements. Pet. at 3. Williams contends that: (1) he was subjected to a custodial interrogation but not given *Miranda* warnings after he helped investigators locate the victim's body, making inadmissible his inculpatory question about how long a prison sentence he would receive and statement that he had confessed to killing Webb; (2) his initial statement to police was coerced because a detective whose name appeared on the waiver form was not present at the interrogation; and (3) although he requested counsel during interrogation, investigators did not

halt the interrogation but coerced him into confessing. Pet. at 7-7B. The Director asserts that each of Williams's challenged confessions and statements were knowing and voluntary. Answer at 9-19. Relief is further precluded, according to the Director, because the state habeas court applied clearly established federal law in a reasonable manner, and Williams fails to rebut the state court's reasonable and presumptively correct factual findings with clear and convincing evidence. Answer at 10-15.

### 1. Statements on Return to San Antonio (Claim 1)

Williams contends that his question and statement on the trip back to San Antonio after showing investigators where he hid Webb's body were given without being read his *Miranda* rights and that he did not understand the possible effects of his self-incriminating statements. Pet. at 7A.

The Supreme Court has recognized that "[t]actics for eliciting inculpatory statements must fall within the broad constitutional boundaries imposed by the Fourteenth Amendment's guarantee of fundamental fairness." *Miller v. Fenton*, 474 U.S. 104, 110, 106 S. Ct. 445, 449 (1985). Two factors determine whether an accused has voluntarily and knowingly waived his constitutional protections against self-incrimination: first, the waiver of the right must be voluntary in that it was not the product of intimidation, coercion, or deception, and second, the relinquishment must be made with full awareness of the nature of the right being waived. *Hopkins v. Cockrell*, 325 F.3d 579, 583 (5th Cir. 2003) (citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986)). A confession is coerced, or involuntary, if "the totality of the circumstances" demonstrate that the defendant did not decide to confess of his own free will. *Arizona v. Fulminante*, 499 U.S. 279, 285-86, 111 S. Ct. 1246, 1251-52 (1991).

In addition, as part of its long-standing recognition that the admission of confessions must respect constitutional protections against compelled self-incrimination, the Supreme Court instituted pre-interrogation warnings in *Miranda v. Arizona* by precluding the use of defendant statements obtained during custodial interrogations unless certain warnings are first given to the defendant.

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); *see also Dickerson v. United States*, 530 U.S. 428, 443-44, 120 S. Ct. 2326, 2336-37 (2000) (reaffirming *Miranda*'s requirements). In the absence of these warnings or their "fully effective equivalent," defendant statements obtained during custodial interrogations cannot be used as evidence of the defendant's guilt. *Miranda*, 384 U.S. at 476, 86 S. Ct. at 1612.

The voluntariness of a confession is ultimately a legal determination. *Miller*, 474 U.S. at 110, 106 S. Ct. at 459. As such, a federal habeas court must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998). The state court's subsidiary factual determinations whether officers engaged in coercive tactics to elicit a confession or

whether *Miranda* warnings were delivered are questions of fact also entitled to deference. *See, e.g., Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997). These factual determinations are presumed to be correct and are overturned only if clear and convincing evidence shows that they were based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d)(2); *Barnes*, 160 F.3d at 222.

Applying these principles to this case, and with due regard to the deferential standards of review required by the AEDPA, it is clear that the state court did not unreasonably apply clearly established federal law to the facts of Williams's case in rejecting the argument that Williams's statement was coerced or obtained through a custodial interrogation that lacked delivery of *Miranda* warnings. It is also clear that Williams fails to rebut by clear and convincing evidence the presumption of correctness accorded to the state court's underlying factual determinations. *See* 28 U.S.C. § 2254(e)(1); *see also, e.g., Barnes*, 160 F.3d at 222.

In reviewing the state court's judgment, this Court considers the decision of the Third Court of Appeals. When there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest on the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594-95 (1991). In this case, the Texas Court of Criminal Appeals denied without written order Williams's state habeas application raising this claim. *Ex parte Williams*, Appl. No. 65,980-04, at cover (July 28, 2010). Because the Third Court of Appeals issued "the last reasoned opinion" on the matter, this Court "looks through" the Texas Court of Criminal Appeals's order to the state appellate court's decision. *Ylst*, 501 U.S. at 803, 111 S. Ct. at 2594. On this point, the

Third Court of Appeals described the events leading up to the statement and question at issue on the trip back from San Antonio.

> On November 20, 2003, Detective Barney Whitson interviewed appellant again about Webb's disappearance. During the course of the day, appellant gave three different statements, each of which was typed on a form that recited appellant's statutory rights, included a statement that appellant understood and waived his rights, and was read and signed by appellant. Before appellant gave his first statement, Whitson also read him his rights and had appellant initial a different form from which Whitson read appellant's rights. Appellant's first statement was similar to the story he told Angell, but when Whitson said he thought Webb had scratched appellant's face and suggested that DNA evidence could incriminate appellant, appellant gave a second statement in which he said members of the Mexican Mafia to whom he owed money had taken Webb. Whitson again told appellant that he did not believe his statement and informed him that the police had found blood inside Webb's car and "that not only did [appellant] have a scratch under his left eye, his right eye was also scratched and it looked like [Webb] was trying to gouge his eyes out." Appellant then gave a third statement admitting to killing Webb. Appellant said Webb was upset because he told her he "just wanted to be friends," so he and Webb drove around in her car, smoked marihuana, and argued. According to appellant's statement, Webb lunged at him and scratched his face, and he "held her against my chest to keep her from hitting me" and to calm her. Appellant held Webb until she stopped moving and then realized he had suffocated her. He unsuccessfully tried to resuscitate her and then drove her body to another location, where he stayed for about four hours, "drinking beer, smoking weed and holding Michell. I was apologizing to Michell." He said, "I don't want to say where I put Michell but I'm willing to show you where she is."

*Williams*, 2009 WL 1708819, at *1-2. In addressing Williams's challenge to the admissibility of the later question and statement that he made on the way back to San Antonio after showing investigators the location of the victim's body, the state court issued the following presumptively correct findings:

> After appellant gave his third statement, Whitson, appellant, and two other detectives drove out to find Webb. After her body was located, Volkmann and his partner were asked to drive appellant back to San Antonio. Volkmann testified that when they arrived back at the police station, appellant asked without any prompting "how much time did I think he would receive for the murder of

[Webb]. He stated, "After all, I confessed to killing her.'" Volkmann had not himself read appellant his rights or informed him that he was under arrest for Webb's murder before appellant made the statement. Although there was no testimony of when appellant was explicitly told that he was under arrest for Webb's murder, he was told at least four times that he was being questioned with regard to her disappearance; was read his rights at least twice; signed one form reciting his rights to indicate that he understood his rights; signed one form that also recited his rights, initialing next to each right; and read and signed his three written statements, all of which recited his rights and stated that he understood and waived his rights. Before he gave his first statement to Whitson, Whitson informed appellant that he was being questioned with regard to Webb's disappearance, and before his second and third statements, he was also informed about the state of the evidence discovered thus far. [Williams] eventually gave a statement admitting to killing Webb and led the police to her body. Not until appellant had been driven back to the police station in San Antonio in handcuffs and leg irons did he make the statement about which he complains. It is beyond rational belief that appellant might have still been under the impression that he was only in custody for outstanding warrants or might somehow not have realized that the focus of the officers' interest in him had shifted from outstanding warrants to Webb's murder. Further, Volkmann testified that appellant volunteered the question without any prompting or questioning, and therefore it was not the result of custodial interrogation. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 5 (West 2005) (nothing precludes admission of statement "that does not stem from custodial interrogation, or of a voluntary statement"); *Ruth v. State*, 167 S.W.3d 560, 570-71 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd) (volunteered statement made to police officer without prompting by police interrogation was admissible). We overrule appellant's second issue.

*Williams*, 2009 WL 1708819, at *4.

Williams points to no evidence to rebut the state court's factual determinations that Williams had been Mirandized multiple times prior to making the challenged statements and that the statements were made voluntarily. In addition, he fails to show how the state courts' necessary conclusion that Williams's statements were not obtained in violation of his rights was a faulty application of the clearly established federal law in this area.

In any event, the complained-of statement and question were cumulative, and thus harmless even if erroneously admitted. On habeas review under the AEDPA, the prejudice of a

constitutional error in a state-court criminal trial is measured by the "substantial and injurious effect" standard of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710 (1993). *See, e.g., Hughes v. Quarterman*, 530 F.3d 336, 345 (5th Cir. 2008), *cert. denied*, – U.S. –, 129 S. Ct. 2378 (2009). An error is sufficiently prejudicial only when it has a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623, 113 S. Ct. at 1714. In the context of habeas review, even if the evidence was indeed prejudicial, the erroneous admission of such prejudicial evidence "will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction." *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998). In the challenged question and statement, Williams asked how long a sentence he would receive and then said, "'After all, I confessed to killing her.'" 3 R.R. at 230; *see also id.* at 230-31. But the jury had already heard Williams's separate statement in which he admitted that he had suffocated the victim. *Id.* at 183. The challenged statement that Williams made to the investigator simply repeated the information contained in the earlier confession. Because it was cumulative of other evidence, it was not crucial evidence and its admission, even if erroneous, was only harmless error. *See Brecht*, 507 U.S. at 637, 113 S. Ct. at 1722.

Because the state habeas court's decision to reject this coerced confession claim did not rest on factual determinations that can be second-guessed under 28 U.S.C. § 2254(e), or involve a decision contrary to or an unreasonable application of clearly established federal law, habeas relief is barred in this Court.

### 2.    Initial  Statement to Police (Claim 2)

Williams next argues that he was not given his *Miranda* rights prior to making his first statement to investigators because the statement form setting out his rights that he signed included

a detective's name who was not involved in the interrogation. Pet. at 7, 7A; *see also* Mem. at 4-5. Williams fails to rebut the presumption under 28 U.S.C. § 2254(e) that the state court's factual findings are correct and also fails to demonstrate that the state court unreasonably applied the clearly established federal law of *Miranda* and voluntary confessions.

Detective Angell testified that due to an oversight, when he used an unfamiliar form during the interrogation, he failed to replace the name "Detective Pollard" in one place with his own name prior to having Williams sign the document. 3 R.R. at 75-77. Although this detail in the statement may have been inaccurate, the statement references Detective Angell elsewhere three times, specifically, being given the *Miranda* warnings by Detective Angell and making the statement to Detective Angell. State's Ex. 16.[3] Williams fails to cite any evidence beyond this single clerical error to demonstrate that his confession was involuntary. Indeed, the evidence in the record supports the state court's determination that the statement was voluntary. According to testimony in the trial court, Williams was read his *Miranda* rights twice prior to making the statement at issue, and he initialed the *Miranda* warnings on the statement. 3 R.R. at 75-76; State's Ex. 16.

Moreover, this statement by Williams was not inculpatory; it actually served to deflect guilt. Williams stated that his only interaction with Webb involved driving her to the airport and dropping off her car at Wal-Mart. *See* State's Ex. 16. As such, even assuming arguendo that this statement was made involuntarily, admitting the statement at trial was harmless. *See Brecht*, 507 U.S. at 637, 113 S. Ct. at 1714.

---

[3] Trial exhibits are located in volume six of the Reporter's Record.

Williams fails to show by clear and convincing evidence that any factual determinations by the state court were unreasonable or that the state-court adjudication of this claim involved an unreasonable or contrary application of clearly established federal law. *See* 28 U.S.C. § 2254(d), (e). This claim for habeas relief should be denied.

### 3. Confession (Claim 3)

William's third claim based on a coercion theory is also without merit. Williams contends that between the time that he made his first and second statements to Sergeant Whitson, he requested an attorney but was denied counsel. Pet. at 7-7A; Mem. at 5-6. He also contends that Whitson threatened him prior to his third statement to Whitson, which was his confession. *Id.*; Pet. at 7A-7B. In support of his claim, he asserts that Whitson promised to "speak to the DA and have him go easy on you and work out a deal," Pet. at 7A, and that Whitson had been "suspended from work once before for not being truthful," Pet. at 7B. Williams's assertions are not supported by the record.

Whitson repeatedly testified that Williams never asked for an attorney. 3 R.R. at 113 ("Q. Did he ever at any point ask for an attorney? A. No, sir."); *Id.* at 119 ("And at any time during the first statement . . . at any time does he ever ask for an attorney? A. No."); *Id.* at 122 ("And at any time during the second statement does he ask for an attorney? A. No, sir."); *Id.* at 126 ("during the taking of the third statement, did he ever ask for an attorney? A. No, sir."); *Id.* at 156 ("Now, at any time did he ask for an attorney? A. No, sir."). Further testimony was offered that Williams was reminded repeatedly that he could assert his *Miranda* rights at any time. *Id.* at 114, 122-23, 157-59. In addition, at the top of each statement that Williams signed were *Miranda* warnings. *See* State's Exs. 18, 19, 20. Williams fails to identify any evidence in the record to support his

contention that he requested an attorney or did not voluntarily elect to confess, and there simply is none.

Moreover, Williams's attempts to cast doubt on Whitson's credibility are unavailing. *See* Pet. at 7, 7B. Whitson testified that he did not know the district attorney, never told Williams that he would "fix a deal," and never promised Williams anything for cooperating. 3 R.R. at 141. Whitson also testified that his work suspensions were only for a traffic violation and a "work permit violation" for working an "after hour job" in 1997. *Id.* at 138-39. There is no indication in the record that Whitson was suspended for being untruthful.

Williams fails to show by clear and convincing evidence that any factual determinations by the state court were unreasonable or that the state-court adjudication of this claim involved a contrary or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d), (e). This claim for habeas relief should be denied.

### B.      Ineffective Assistance of Trial Counsel (Claims 4a, 4b & 4c)

Williams asserts that his trial attorney was ineffective because he failed to: (1) argue motions that Williams had filed prior to the appointment of counsel; (2) properly advise Williams to raise a self-defense argument rather than argue that the death resulted from an involuntary act; and (3) file a notice of appeal, thereby creating a conflict of interest. Pet. at 8-8A. The Director counters that Williams has not satisfied *Strickland*'s prerequisites to demonstrate unprofessional error and resulting prejudice, nor has he demonstrated, as required by 28 U.S.C. § 2254(d), that the state habeas court unreasonably applied clearly established federal law in rejecting Williams's ineffective-assistance claims. Answer at 20-26. More specifically, the Director contends that: (1) Williams fails to identify which pro se motions his counsel should have raised but did not, nor how

he was prejudiced by any failure to raise those motions; (2) a defense asserting that involuntary acts caused the death would have been ineffectual whereas the self-defense theory had some basis in the record; and (3) Williams fails to demonstrate how not filing a notice of appeal represented a conflict of interest on the part of his trial counsel, how not filing the appeal notice constituted deficient performance, or how that purported error prejudiced Williams. Answer 20-26.

Ineffective assistance of counsel claims are analyzed under the well-settled requirements set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S. Ct. at 2064. For the first requirement, the proper measure of attorney performance is "simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S. Ct. at 2065. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 686-89, 104 S. Ct. at 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S. Ct. at 2065. For the second requirement, the question is whether there is a reasonable probability that, absent the alleged error,

the factfinder would have had a reasonable doubt respecting guilt, a question that must be considered in the context of the entire evidence. *Id.* at 695, 104 S. Ct. at 2068-69.

Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687, 104 S. Ct. at 2064. Because a convicted defendant must satisfy both requirements of *Strickland* to demonstrate ineffective assistance, a failure to establish either deficient performance or prejudice makes it unnecessary to consider the other requirement. *Id.* at 697, 104 S. Ct. at 2069; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

### 1. Williams's Pro Se Motions (Claim 4a)

Williams asserts that his trial counsel erred by failing to argue pro se motions that were filed prior to trial counsel's appointment. Pet. at 8. Williams, however, fails to specify which pro se motions he believes were erroneously ignored or how he was harmed by any failure to argue the motions. *See id.*

The Clerk's Record contains seven pro se motions that appear to have been filed by Williams. 2 C.R. at 63-95. Some of the motions were duplicative of motions filed by trial counsel or the Texas Rules of Evidence. *Compare, e.g.,* 1 C.R. at 15, 49, *and* 2 C.R. at 74 (seeking exclusion of references to extraneous offenses); *see also, e.g.,* 2 C.R. at 68 (moving for exclusion of hearsay evidence); 2 C.R. at 78 (moving to invoke witness sequestration rule). In addition, the record indicates that trial counsel did attempt to raise some of the objections filed by Williams, such as his motion to disallow police-officer witnesses from testifying in uniform. *See* 3 R.R. at 8.

By not identifying any pro se motions that were not duplicative, not argued, and had possible merit that would have been presented under the norms of reasonable professional judgment in the circumstances of his trial, Williams fails to show counsel error.[4]

Williams also fails to even assert that he was prejudiced by his counsel's purported error. Mere allegations of counsel error or prejudice will not suffice to support an ineffective-assistance claim. *See, e.g., Kinnamon v. Scott*, 40 F.3d 731, 735 (5th Cir. 1994) (explaining that "speculation" of ineffective assistance is not a basis for habeas relief); *see also Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). The state court's decision was not an unreasonable application of the clearly established federal law of *Strickland*, nor was it contrary to that established law. Accordingly, 28 U.S.C. § 2254(d), as amended by the AEDPA, bars habeas relief on this claim.

## 2. Advice Concerning Defense Theory (Claim 4b)

Williams also contends that his trial counsel failed to properly advise him which defense to raise, wrongly recommending self-defense rather than a theory that Webb's death was caused involuntarily. Pet. at 8A.

Williams has not demonstrated a deficiency on the part of counsel. Abandoning self-defense in favor of an involuntary defense would have been ill-advised under reasonable professional standards. Williams admitted that after the victim allegedly attacked him and instigated the fight, he "held Michell against [his] chest until she stopped moving. I don't know

---

[4] Moreover, defense counsel is not required to pursue frivolous objections and motions on behalf of a client; in fact, counsel has a duty to advance only objections and motions that are supported by law and nonfrivolous argument. *See, e.g., Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); TEXAS CODE OF CRIM. P. art. 1.052.

how long I held her against my chest but I guess it was too long because I suffocated her." State's Ex. 20. This testimony did not support an involuntary act. Acts are involuntary under Texas law when "physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus." *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003); *see also* TEX. PENAL CODE § 6.01(a) ("A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession."). No evidence in the record permitted characterization of Williams's conduct as involuntary. *See, e.g.,* State's Ex. 20. By contrast, although Williams admitted that he purposefully performed the act that killed Webb, he also offered facts supporting a theory that he was attempting to protect himself from Webb. As such, his counsel was reasonable in fact and law in not recommending an unsupportable involuntary theory over an arguable self-defense position.

The state habeas court's decision to reject this ineffective assistance of counsel claim was neither contrary to, nor did it involve an unreasonable application of, the clearly established federal law of *Strickland*. *See* 28 U.S.C. § 2254(d). Habeas relief on this claim is not available in this Court.

### 3. Filing of Notice of Appeal (Claim 4c)

Williams argues that his trial counsel's performance was also ineffective because he did not file a notice of appeal, thereby demonstrating "a conflict of interest." Pet. at 8A. Williams, however, does not explain how trial counsel's not filing a notice of appeal evidenced a conflict of interest, nor does he show deficient performance by trial counsel. *Id.*

The trial court certified Williams's right to appeal on February 9, 2006, the date of Williams's conviction. 1 C.R. at 291. Trial counsel signed the Certification of the Right to Appeal. *Id.* The trial court subsequently granted trial counsel's request to withdraw as Williams's attorney on March 6, 2006. 1 C.R. at 300 (providing that counsel "is hereby withdrawn as attorney of record for Jonathan Williams in all further proceedings in this cause, including any Motion for New Trial and/or appeals"); *see also* 1 C.R. at 298. Significantly, there is no indication in the record, nor does Williams contend, that he ever requested that his trial counsel file a notice of appeal. *Cf. Roe v. Flores-Ortega,* 528 U.S. 470, 477-79, 120 S. Ct. 1029, 1035-36 (2000) (recognizing that disregarding a request to appeal is professionally unreasonable); *see also, e.g., United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007) (relying on request for appeal as necessary component of an ineffective-assistance claim). Williams fails to show that his trial counsel committed an error that fell below reasonable, professional norms.

In addition, Williams does not satisfy the second *Strickland* prerequisite for an ineffective-assistance claim, prejudice; he fails to even assert that he was prejudiced. Pet. at 8A. Williams was eventually granted an out-of-time right to appeal, and did in fact appeal his conviction. *See Williams*, 2009 WL 1708819, at *1. Because Williams obtained the relief that he would have received for this ineffective-assistance claim, *see, e.g., United States v. West*, 240 F.3d 456, 459-61 (5th Cir. 2001) (explaining that habeas remedy for counsel's failure to timely file an appeal upon defendant's request is an out-of-time appeal), any error by trial counsel was ultimately harmless.

Because Williams fails to show that his trial counsel's performance was deficient, or that counsel's performance prejudiced him, the state habeas court's determination that this ineffective-

assistance claim was without merit was a reasonable application of the clearly established law under *Strickland.* This claim must also be denied.

### C.     Trial-Court Errors (Claims 5a & 5b)

Williams contends that the trial court erred in two ways: (1) by failing to rule on Williams's pro se motions, Pet. at 8A (Claim 5a); and (2) by failing to appoint an attorney for Williams's appeal after Williams's trial attorney was allowed to withdraw, thus depriving Williams of his right to counsel, Pet. at 8A (Claim 5b).  The Director points out that Williams fails to identify any pro se motions not presented or ruled on, and fails to show any harm resulting from the purported failures.  Answer at 26.  With regard to the appointment of appellate counsel, the Director concedes that the trial court erred in not making the appointment once trial counsel was permitted to withdraw, but because Williams was ultimately appointed appellate counsel and granted an out-of-time appeal by the Texas Court of Criminal Appeals, Williams was granted the appropriate relief for the error, and the claim is moot.  Answer at 26-27.

### 1.     Not Ruling on Pro Se Motions (Claim 5a)

As discussed, Williams's trial counsel raised, and the trial court did rule on several of his pro se motions.  *See supra* II.B.1.  Williams fails to identify any particular motions that were not presented or ruled on.  Williams also fails to show that any harm resulted from these purported failures.  As such, this claim is conclusory and must be rejected.  *See, e.g., Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009).  The state habeas court thus did not unreasonably apply clearly established federal law in ruling against Williams's claim that the trial court committed reversible error with regard to his pro se motions.

## 2. Appointment of Appellate Counsel (Claim 5b)

Trial counsel requested that the trial court appoint an appellate attorney for Williams when he moved to withdraw on March 3, 2006, 1 C.R. at 298, but the trial court did not do so. The Director concedes that the trial court erred. Answer at 27. Following a state habeas application requesting appointment of appellate counsel and an out-of-time appeal, the Texas Court of Criminal Appeals granted the writ. *Ex parte Williams,* No. AP-75,583, 2007 WL 57844, at *1 (Tex. Crim. App. Jan. 10, 2007). Williams subsequently filed an appeal, and his conviction was affirmed by the Third Court of Appeals of Texas. *Williams*, 2009 WL 1708819, at *4. Williams has been granted the relief that would be necessitated by the trial court's error. *See, e.g., Ex parte Rosales*, No. AP-75728, 2007 WL 2403343, at *1 (Tex. Crim. App. Aug. 22, 2007). His claim is thus moot. The state habeas court's determination that this claim is without merit is a reasonable application of clearly established federal law and 28 U.S.C. § 2254(d) bars habeas relief on this claim.

## D. Testimony in Punishment Phase (Claim 6)

Williams argues that he received an "illegal sentence" because the trial court admitted improper evidence during the punishment phase of the trial. Pet. at 8A. The trial court admitted evidence that a man witnessed Webb after she had been attacked by a man she identified as her boyfriend. 5 R.R. at 35-41. Williams argues that because the witness, Ralph Pipes, could not identify Williams as the boyfriend in question, the evidence should have been excluded. *See id.* at 41. The Director contends that a state court's erroneous evidentiary ruling cannot justify habeas relief unless it is so egregious that it denies fundamental fairness under the Due Process Clause,

that the testimony was properly admissible, and in any event, the testimony was cumulative and therefore harmless.  Answer at 27-29.

A state court's erroneous evidentiary ruling does not warrant federal habeas relief except when it is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.  *See, e.g., Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998).  Williams fails to assert that the admission of the testimony ran afoul of any specific constitutional right or rendered his trial fundamentally unfair.  It is not the role of a federal habeas court to review a state court's interpretation of the State's own rules of evidence.  *See, e.g., Charles v. Thaler,* 629 F.3d 494, 500 (5th Cir. 2011) (noting that federal habeas court's function is not to review a state's interpretation of its own law).  The state court's determination of this habeas claim was not in conflict with clearly established federal law or an unreasonable application of that law.  Williams is not entitled to habeas relief on this ground.

### RECOMMENDATION

It is recommended that Williams's application for writ of habeas corpus be denied.

### CERTIFICATE OF APPEALABILTY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained

the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). In cases in which a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Williams's Section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 20th day of May, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE